ISHEE, JUSTICE, DISSENTING:
 

 ¶ 29. The majority holds that Mississippi Code Section 31-7-13(d)(iv) precludes a governing authority from procuring additional
 funding for a public-construction project after the opening of sealed bids. (Maj. Op. ¶ 27). I would find there to be no such preclusion. Accordingly, I must respectfully dissent.
 

 ¶ 30. Section 31-7-13, Hemphill argues (and the majority agrees) required the City to reject both bids because they both were ten percent more than the original amount allocated for the project. But Clarksdale argues that, while the text of Section 31-7-13(d)(iv) grants a municipality the discretion to negotiate under certain circumstances, it does nothing to prevent a governing authority from securing additional funding. After examining the text of the statute, I agree.
 

 ¶ 31. My agreement with Clarksdale's position is based on the text of the provision, which provides that if the bid is not more than ten percent higher than the amount (originally) allocated, a governing authority "
 
 shall be permitted to negotiate
 
 with the lowest bidder in order to enter into a contract for an amount not to exceed the funds allocated."
 
 Miss. Code Ann. § 31-7-13
 
 (d)(iv) (Supp. 2017) (emphasis added). A plain reading of the text confirms that this statute applies only when the governing authority
 
 negotiates
 
 with the lowest bidder. To negotiate means "[t]o communicate with another party for the purpose of reaching an understanding[,]" or "[t]o bring about by discussion or bargaining[.]"
 
 Negotiate
 
 , Black's Law Dictionary (10th ed. 2014). Here, nothing in the record indicates that the governing authority (the City) undertook any action which resembled "negotiations" with Hemphill or Landmark. Neither discussions nor bargaining took place with either party post-bid; the City simply obtained funding to meet the lowest bid.
 

 ¶ 32. Absent from the text of the statute, however, is any language which prohibits a governing authority from obtaining additional funding to pay for a public project. To be sure, when reading the text of Section 31-7-13(d)(iv), it is reasonable to infer that if all of the submitted bids exceed the funding a governing authority possesses for a project, the governing authority in that instance has no choice but to reject all bids, as it simply could not pay the price of the bid. However, if all bids exceed the budgeted amount for a project, but the governing authority can procure additional funding, there is simply nothing in the text of the statute that prohibits it from doing so.
 

 ¶ 33. In support of its finding that Section 31-7-13(d)(iv) precluded Clarksdale from obtaining additional funding, the majority reasons that the allocated amount is to be determined before bid solicitation. (Maj. Op. ¶ 20). In doing so, the majority cites an opinion of the Attorney General that-ironically enough-states that, while the funding determination
 
 should
 
 be made before bids are solicited, "there is
 
 no specific statutory provision
 
 directing a public entity as to whether the determination is to be made prior to the solicitation of bids or may be made after bids are received." Op. Miss. Att'y Gen. 2012-00195 (April 20, 2012) (emphasis added). So, while that Attorney General's opinion suggests that it may be a wise and preferable policy to require such determination before solicitation, it also simultaneously reinforces my position that no statute demands such.
 

 ¶ 34. For the reasons stated above, in the end, I would affirm the City's award of the contract to Landmark. I respectfully dissent.
 

 KITCHENS, P.J., AND KING, J., JOIN THIS OPINION.